[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO REOPEN
On July 14, 1997, the plaintiff commenced this foreclosure action against Anne Occhipinti alleging default on a mortgage note. Annette Webley was also named as a defendant in the foreclosure action because she is a tenant of the subject premises, and her right of possession is, according to the plaintiff, subordinate to the mortgage. On August 4, 1997, Webley, as well as other defendants in the case, were defaulted for failure to appear, and on August 18, 1997, the plaintiff's motion for judgment of strict foreclosure was granted by the court, Curran, J. The plaintiff sent notice of judgment to Webley pursuant to Practice Book § 354, now Practice Book (1998 Rev.) § 17-22.
On September 29, 1997, Webley filed a "Verified Motion to Reopen" the judgment of strict foreclosure, pursuant to General Statutes § 52-212 and Practice Book § 377, now Practice Book (1998 Rev.) § 17-43, on the basis that the default for CT Page 13932 failure to appear was entered through mistake or accident and there exists a good defense to the action.
Law days commenced on April 13, 1998, and Occhipinti failed to redeem. Title to the property thus vested in the plaintiff on April 20, 1998. After taking title to the property, the plaintiff sought to eject the tenants of the building, including Webley. On June 23, 1998, Webley filed a motion to stay execution of ejectment and concurrently reclaimed her motion to open[1]
judgment filed on September 29, 1997, which had been marked off by agreement until the plaintiff took title to the property. On July 20, 1997, Webley filed a memorandum in support of her motion to open the judgment. On the same date, the plaintiff filed a memorandum in opposition and an objection to the motion to open.
"Practice Book § [17-43] is the vehicle by which to open a judgment rendered upon a default . . ." Pump Services Corp. v.Roberts, 19 Conn. App. 213, 216, 561 A.2d 464 (1989). Practice Book § 17-43,[2] as well as General Statutes § 52-212,[3] "provides that any judgment rendered upon default may be set aside within four months, upon complaint or written motion of any person prejudiced by the judgment. The aggrieved person must show reasonable cause, or that a good defense existed at the time of judgment, and that the movant was prevented by mistake, accident or other reasonable cause from making the defense . . . `It is thus clear that to obtain relief from a judgment rendered after a default, two things must concur. There must be a showing that (1) a good defense, the nature of which must be set forth, existed at the time judgment was rendered, and (2) the party seeking to set aside the judgment was prevented from making that defense because of mistake, accident or other reasonable cause.'" (Citations omitted.) Triton Associates v. Six New Corporation,14 Conn. App. 172, 174-75, 540 A.2d 95, cert. denied, 208 Conn. 806,545 A.2d 1104 (1988), quoting Pantlin Chananie DevelopmentCorporation v. Hartford Cement Building Supply Co.,196 Conn. 233, 235, 492 A.2d 159 (1985). "A motion to open . . . is addressed to the [trial] court's discretion . . ." (Internal quotation marks omitted.) Red Rooster Construction Co. v. RiverAssociates, Inc., 224 Conn. 563, 575, 620 A.2d 118 (1993). Practice Book 17-43 and General Statutes § 52-212 also provide that: "Such written motion shall be verified by the oath of the complainant or the complainant's attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the plaintiff or the defendant failed to appear." CT Page 13933
Webley's motion to open the judgment was filed within four months from the date of judgment, and is verified by the oath of Webley. Thus, the only remaining questions are whether Webley has shown that a good defense existed at the time judgment was rendered and that she was prevented from making such a defense because of mistake, accident or other reasonable cause.
Webley alleges that she and Occhipinti entered into a "Section 8"[4] lease on May 1, 1995, and attaches a copy of the lease to her memorandum. According to Webley, the plaintiff, as "owner"[5] of the property, may only terminate a Section 8 lease under certain circumstances as set forth in the lease, which tracks the language of the federal statute and regulations. Webley thus argues that the federal Section 8 program preempts state common law, which provides that a judgment of strict foreclosure automatically extinguishes any prior tenancies; accordingly, Webley asserts that a valid defense existed at the time judgment was rendered in the foreclosure action. The court agrees.
Under a Section 8 lease, "the tenancy can only be terminated under certain circumstances." Atlantic Mortgage and InvestmentCorp. v. Pervis, Superior Court, judicial district of New Haven at New Haven (Housing Session), Docket No. 561076 (December 3, 1997) (Levin, J.) (21 CONN. L. RPTR. 619, 620). 42 U.S.C. § 1437f(d)(B) (ii) provides that "the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditlons of the lease, for violation of applicable Federal, State, or local law, or for other good cause." See also24 C.F.R. § 982.310(a). "`Other good cause' includes, but is not limited to, (i) failure by the family to accept a new lease, (ii) a history or disturbance by the family of others in the neighborhood, (iii) the owner's desire to use the unit for personal or family use or for other than residential rental purposes, and (iv) business or economic reasons.24 C.F.R. § 982.310(d). The owner must give a written notice to the tenant, with a copy to the housing authority, specifying the grounds for termination, at or before commencement of an eviction action, and may be included in the notice required under state or local law. 24 C.F.R. § 982.310 (e).
"If the owner wishes to terminate the HAP [housing assistance payment] contract for a business or economic reason, § 982.455 requires a 90-day notice to the tenant and the housing CT Page 13934 authority. Section 982.455 describes terminating the HAP contract as `opting out' of the program. In other words, the owner no longer wants to participate in the Section 8 program for business or economic reasons, but does intend to continue renting the premises. The owner does not have to show good cause against the current tenant, but good cause to discontinue renting to Section 8 tenants altogether . . . The notice must contain sufficient detail to enable the HUD [Department of Housing and Urban Development] field office to evaluate whether the owner has good cause and whether there are additional actions that can be taken by HUD to avoid the termination, and `must state that the owner and the housing authority may agree to a renewal of the HAP contract, thus avoiding the termination.' 24 C.F.R. § 984-455(b)(3)."Atlantic Mortgage and Investment Corp. v. Pervis,supra, 21 CONN. L. RPTR. 620. The Section 8 lease at issue tracks the language of the statute and regulations, and provides in relevant part: "(1) The Landlord shall not terminate the tenancy except for: (i) Serious or repeated violation of the terms and conditions of the Lease; (ii) Violation of Federal, State, or local law which imposes obligations on a tenant in connection with the Occupancy or use of the dwelling unit and surrounding premises; or (iii) Other good cause . . .
"(2) The following are some examples of `other good cause' for termination of tenancy by the Landlord: (i) Failure by the Tenant Family to accept the offer of a new Lease in accordance with paragraph (L) of this section; (ii) A Tenant Family history of disturbance of neighbors or destruction of property, or of living or housekeeping habits resulting in damage to the unit or property; (iii) Criminal activity by Tenant Family members involving crimes of physical violence to persons or property; (iv) The Landlord's desire to utilize the unit for personal or family use or for a purpose other than use as a residential unit; or (v) A business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, desire to rent the unit at a higher rental) . . ."
Pursuant to Connecticut common law, a lease is terminated by operation of law upon a judgment of strict foreclosure. See FirstFederal Bank v. Whitney Development Corp. , 237 Conn. 679, 688-89,677 A.2d 1363 (1996); Beach v. Beach Hotel Corp. , 113 Conn. 716,720, 156 A. 865 (1931). In addition, General Statutes § 49-22
provides: "In any action brought for the foreclosure of a mortgage or lien upon land, or for any equitable relief in relation to land, the plaintiff may, in his complaint, demand CT Page 13935 possession of the land, and the court may, if it renders judgment in his favor and finds that he is entitled to the possession of the land, issue execution of ejectment, commanding the officer to eject the person or persons in possession of the land and to put in possession thereof the plaintiff or the party to the foreclosure entitled to the possession by the provisions of the decree of said court, provided no execution shall issue against any person in possession who is not a party to the action except a transferee or lienor who is bound by the judgment by virtue of a lis pendens . . ."
The federal statutory scheme does not discuss the effect of a foreclosure on the status of the Section 8 tenancy. The plaintiff argues that because the statutory scheme fails to address this issue, state law controls and the tenancy is terminated by operation of law. Conversely, Webley argues that the state common law irreconcilably conflicts with the federal scheme for the termination of a Section 8 lease and acts as an obstacle to the accomplishment of Congress' objectives for providing security of tenure for low-income tenants participating in the rental assistance program, and therefore the federal scheme preempts state common law.
There is a split in the Connecticut Superior Courts on the issue of whether the federal law preempts state law in this context. In Atlantic Mortgage and Investment Corp. v. Pervis,supra, 21 CONN. L. RPTR. 619, the court determined that there exists no irreconcilable conflict between the federal scheme and state common law because "nothing in the regulations address the effect on a Section 8 lease of a foreclosure" and accordingly "[m]atters left unaddressed in such a [comprehensive and detailed] scheme are presumably left subject to the disposition provided by state law." (Internal quotation marks omitted.) Id., 622. The court also found no obstacle of the state law to the federal goal based on "the federal policy interests at stake, and the commercial interests embodied in state law that could be disrupted" — i.e., "encouraging mixed-income housing, promoting private landlord-tenant relationships, and making it economically feasible for private participation." Id., 622 623.
In Bristol Savings Bank v. Savinelli, Superior Court, judicial district of New Haven at New Haven, Docket No. 377478 (March 21, 1996) (DeMayo, S.T.R.) (16 CONN. L. RPTR. 380), the court determined that "owner," as defined in the federal statute and regulations, includes "those other than a landlord renting to CT Page 13936 a tenant," and therefore "the statute contemplated situations . . . where the `owner' inherits the tenant in the foreclosure and does not lease premises under Section 8." Id., 381. Accordingly, upon examination of EMC Mortgage Corp. v.Smith, Civ. No. 95-04794, Housing Court Department, City of Boston, Massachusetts (January 5, 1996), decided in a sister jurisdiction, the court concluded "that the applicable federal law preempts our common law which permits tenancies to be terminated automatically via foreclosure." Bristol Savings Bankv. Savinelli, supra, 16 CONN. L. RPTR. 381.
Judge DeMayo's decision in Bristol Savings Bank v. Savinelli
adopts the sound reasoning of EMC Mortgage Corp. v. Smith, which determined that the federal scheme preempts Massachusetts state law, which, like Connecticut common law, provides for the automatic termination of tenancies upon foreclosure. The court inEMC Mortgage Corp. v. Smith found that "[t]he Section 8 statute does not provide in any manner for the automatic termination of a Section 8 tenancy" but, rather, provides specific notice and termination provisions. EMC Mortgage Corp. v. Smith, supra, Civ. No. 95-04794, pp. 13-15. Thus, "[i]t is impossible to apply the state common law foreclosure rule to Section 8 tenancies without creating a direct conflict with [the] notice and termination provisions." Id., 15. In addition, the court found that "[a] central purpose of the Section 8 program is to provide participating families with security of tenancy and reasonable assurance that, unless they breach a material term of their lease or the landlord has `good cause' to terminate the tenancy, they can continue to reside in their homes." Id., 17. Accordingly, the court determined that "[a]pplication of the state common law foreclosure rule to federally subsidized tenancies would frustrate the congressional mandate that Section 8 tenants be provided with reasonable security . . ." Id.
The reasoning of Bristol Savings Bank v. Savinelli and EMCMortgage Corp. v. Smith thoroughly and accurately addresses the relevant considerations applicable to the present case. The court finds that the federal law providing for Section 8 tenancies preempts the state common law for automatic termination of tenancies upon judgment of strict foreclosure. See BristolSavings Bank v. Savinelli, supra, 16 CONN. L. RPTR. 380-81. Accordingly, Webley has sufficiently demonstrated that a good defense existed at the time judgment of strict foreclosure was rendered in the present case. CT Page 13937
The plaintiff does not challenge Webley's assertion that she did not appear in the case because of an accident, mistake or other reasonable cause. The court finds that Webley has sufficiently demonstrated that she was prevented from making her defense because of mistake, accident or other reasonable cause. See Verified Motion to Reopen, ¶¶ 2-a. to 2.c. Therefore, Webley's motion to open the judgment of strict foreclosure is granted.
The Court
Curran, J.